**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MICHAEL ENRIQUE SANDOVAL PINTO,** | |
| **Petitioner,** | **CIVIL ACTION FILE** |
| **v.** | **NO. 1:26-CV-4486-MHC-CCB** |
| **KRISTEN SULLIVAN, et al.,** | |
| **Respondents.** | |

**ORDER**

Petitioner Michael Enrique Sandoval Pinto filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the Bureau of Immigrations and Customs Enforcement. Verified Pet. for Habeas Corpus Relief ("Pet.") [Doc. 1]. Respondents Kristen Sullivan, David Venturella, Markwayne Mullin, and Todd Blanche have filed a response ("Resp't's Resp.") [Doc. 5], and Petitioner has filed a reply ("Pet'r's Reply") [Doc. 6].

For the reasons stated below, the petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a Venezuelan national who entered the United States in October of 2022. Pet. at 10; Dep't of Homeland Security ("DHS") Notice to Appear ("Notice") [Doc. 4-1] at 2. He was admitted to the United States "as a nonimmigrant

Venezuelan Humanitarian Parole with authorization to remain in the United States for a temporary period not to exceed" October 28, 2024. Notice at 2. Petitioner was granted Temporary Protected Status ("TPS") from May 15, 2024, through April 2, 2025. Approved Notice [Doc. 4-5] at 2. However, the Department of Homeland Security ("DHS") terminated TPS for Venezuelan nationals on February 1, 2025. Decl. Of Lia Chambliss (Aug. 18, 2026) ("Chambliss Decl.") [Doc. 4] ¶ 9; Noem v. National TPS All., 146 S. Ct. 23 (2025). On April 1, 2025, DHS issued Petitioner a termination of parole letter, informing him that his parole would end on the earlier of his original parole termination date or April 24, 2025. Termination of Parole (Apr. 1, 2025) [Doc. 4-6] at 2. The letter instructed Petitioner to depart the United States no later than the date of the termination of his parole. [Id.]. Petitioner did not leave the United States. See generally Pet.; Chambliss Decl. ¶¶ 11-14.

On or about July 9, 2026, Petitioner was arrested by Cobb County authorities "on allegations of domestic violence and strangulation arising from an incident involving his U.S. citizen girlfriend." Pet. at 10. The Cobb County warrant was dismissed on August 7, 2026. Warrant Dismissal (Aug. 7, 2026) [Doc. 1-2] at 2. United States Immigration and Customs Enforcement ("ICE") took Petitioner into

custody at some point[1] between August 7 and August 9, 2026. Pet. at 11; Chambliss Decl. ¶ 12. The original notice to appear charged Petitioner as removable under 8 U.S.C. § 237(a)(1)(B). Notice at 2. However, after Petitioner's arrest, DHS filed a Form I-261 amending the notice to appear recharging Petitioner as an arriving alien inadmissible under § 212(a)(7)(A)(i)(I). Form I-261 [Doc. 4-7].

On August 9, 2026, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pet. In the petition, he asks that the Court either order his immediate release or, in the alternative, order Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226 and "specify[] that at any such hearing: (a) the government bears the burden of proving that Petitioner is either a flight risk or a danger to the community; and (b) the government must satisfy that burden by clear and convincing evidence." Id. at 38-39. Respondents argue that Petitioner is not entitled to a bond hearing pursuant to § 1226 because Petitioner was stopped at the border when entering the country and he remains an "applicant for admission" pursuant to § 1225 after the expiration of his parole. Resp't's Resp. at 1-5; 7-13.

---

[1] The parties' filings offer conflicting information as to the exact date of Petitioner's arrest by ICE. See Pet. at 11; Chambliss Decl. ¶ 12; Resp't's Resp. at 6.

## II. DISCUSSION

The issue in this case turns on whether Petitioner is to be treated an applicant seeking admission pursuant to 8 U.S.C. § 1225 or is entitled to a bond hearing under 8 U.S.C. § 1226. Section 1225 states that any noncitizen "present in the United States who has not been admitted or who arrives in the United States" is "deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Such applicants for admission are subject to mandatory removal if they are deemed inadmissible. Id. § 1225(b)(2)(A). The United States Court of Appeals for the Eleventh Circuit recently considered this issue and held that § 1225(b)(2)(A) applies to the narrow category of "those seeking lawful entry into the United States" and "does not apply to [p]etitioners or to other present aliens not seeking admission."[2] Hernandez Alvarez v. Warden, 175 F.4th 1258, 1276 (11th Cir. 2026). The Eleventh Circuit distinguished § 1226 as follows:

> First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). For those aliens, DHS "may continue to detain the arrested alien," or "may release the alien" on either bond or "conditional parole." Id. § 1226(a)(1)–(2). However, not all detained aliens are eligible for release. Thus, under § 1226(c), certain classes of "inadmissible" or "deportable" aliens with criminal records or who are suspected of terrorism-related activity must

---

[2] Unlike this case, in Hernandez Alvarez, the petitioners entered the United States without inspection. 175 F.4th at 1263.

> remain in DHS custody. Id. § 1226(c)(1)(A)–(E); see also id. § 1226(a) (instructing that release may occur "[e]xcept as provided in subsection (c)"). Federal regulations additionally explain that bond-eligible aliens detained pursuant to § 1226 are generally entitled to a review of their custody determination (including whether they may be released on bond) at a hearing before an immigration judge. See 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1).

Hernandez Alvarez, 175 F.4th at 1262–63 (footnote omitted). Like the petitioners in that case, Petitioner here "[was] only present in the country" and "[was] not seeking or pursuing any object, let alone 'lawful entry'" and, as such, is not subject to mandatory detention under § 1225. Id. at 1269.

Respondents point to 8 U.S.C. § 1182 in support of their contention that because Petitioner was paroled in 2022, he remains subject to § 1225's mandatory detention indefinitely, despite the fact that his parole expired on October 28, 2024. Resp't's Resp. at 9-10. The relevant portion of § 1182 states that:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

It is undisputed that Petitioner's parole expired; however, he "was not detained in connection with the expiration and termination of his parole, but rather was simply detained after ICE agents randomly encountered him." Martinez v. Lyons, No. 3:25CV1021 (RCY), 2026 WL 1257330, at *5 (E.D. Va. May 7, 2026) (internal quotation marks and footnote omitted) (rejecting a § 1182(d)(5) argument similar to the one made here and ordering a hearing under § 1226(a)); see also Vasquez v. Superintendent, No. 3:26CV579 (RCY), 2026 WL 2086432 (E.D. Va. July 20, 2026) (observing that ICE officers detained the petitioner after a traffic stop by local police, and "like a noncitizen who unlawfully enters the United States and is present for years prior to being detected, here, after Petitioner's short-term parole ended, Petitioner established a multi-year presence prior to being rediscovered") (internal quotation marks and citation omitted). And "while Respondents are correct that the expiration of § 1182(d)(5)(A) parole returns the parolee to the custody from which he was paroled, many courts across the country have consistently held that the expiration of § 1182 parole does not require treating the alien as if he had never been paroled in the first place." Sylvaince v. Warden, No. 26-CV-23991-RAR, 2026 WL 2568522, at *3 (S.D. Fla. Aug. 31, 2026) (internal quotation marks omitted); see also Zaga Tawil v. Cardinal, No. 26-CV-22521-BLOOM, 2026 WL 2198539, at *5 n.2 (S.D. Fla. July 30, 2026) (collecting cases). "Instead, these courts reason that

section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." Sylvaince, 2026 WL 2568522, at *3 (internal quotation marks and alteration omitted). Therefore, "based on the border-interior distinction instantiated in § 1225 and § 1226, an alien like Petitioner—who is re-detained in the interior after living in the United States for years—is properly re-detained only under § 1226(a)." Id. (internal quotation marks omitted).

Accordingly, Respondents' argument that because Petitioner was once granted parole (which has long expired) he remains subject to mandatory detention under § 1225 fails.[3] See Sylvaince, 2026 WL 2568522, at *3 ("This approach is consistent with the *ratio decidendi* of Hernandez Alvarez. Thus, the Court finds that § 1226(a) governs Petitioner's detention and Petitioner is entitled to an individualized bond hearing."); Vasquez, 2026 WL 2086432, at *3 ("Because

[3] Because § 1225(b) does not apply to Petitioner, it is unnecessary to address Petitioner's other arguments. Additionally, Petitioner presented for the first time in his reply (along with a supplemental brief and 360 pages of exhibits) a lengthy argument that a bond hearing is not an adequate substitute for release due to bias in bond hearings. Pet'r's Reply at 10–12 (citing Docs. 6-1, 6-2, 6-3). However, arguments raised for the first time in a reply are not properly before the Court. Herring v. Secretary, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005).

Petitioner's parole ended and he was not detained based on the expiration of his parole but rather was detained after agents randomly encountered him, . . . Petitioner is entitled to a bond hearing pursuant to § 1226(a)."); see also Maradiga Alvarado v. Crawford, No. 2:26CV572, 2026 WL 2076155, at *3 (E.D. Va. July 17, 2026) ("Petitioner's parole ended more than two years before he was detained in May of 2026. Respondents do not point to any steps the government took during this multi-year period to enforce the end of Petitioner's parole by taking Petitioner into custody. . . . Petitioner . . . established a long-term, albeit unlawful, presence in the United States. . . . [T]hese events cannot be reasonably construed as a valid continuation of the 'legal fiction' that Petitioner remained stopped at the border.") (emphasis in original); Blanchard v. Rhoden, No. 3:26-CV-2000-JEP-LLL, 2026 WL 2546133, at *2 (M.D. Fla. Aug. 28, 2026) (rejecting a parole argument like the one made here).

Petitioner asks that the Court order his immediate release, or in the alternative, order Respondents to provide him with a prompt bond hearing pursuant to § 1226(a). [Pet. at 38-39]. This Court finds that the appropriate course of action is not to order an immediate release, but rather to allow Respondents a brief period to promptly comply with the requirements of § 1226, or to release Petitioner from custody if they fail to do so. See Hernandez Alvarez v. Morris, No. 25-24806-CV-WILLIAMS, 2025 WL 4710007, at *4 (S.D. Fla. Oct. 27, 2025) (ordering bond hearing or release

from custody within two days), aff'd sub nom. Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026); J.G. v. Warden, 501 F. Supp. 3d 1331, 1342 (M.D. Ga. 2020) (ordering bond hearing or release from custody within fourteen days); but see Camacho-Gutierrez v. Thompson, No. 5:25-CV-01876-MA, 2026 WL 195758, at *1 (W.D. Tex. Jan. 16, 2026) (ordering the petitioner's immediate release from custody).

Respondents argue that the Court should not order an immediate bond hearing under § 1226 because that is not the first procedural step under § 1226. Resp't's Resp. at 14. Respondents contend that the first step is for an ICE officer to perform a custody determination and, if Petitioner disagrees with the determination, he can appeal to an immigration judge. Id. The Court is providing Respondents seven days in which to conduct a bond hearing. Respondents can comply with this Order by performing a custody determination in advance of any bond hearing or granting a bond hearing without going through that additional step. The bottom line is that a bond hearing under § 1226 must be conducted within seven days of this Order or Petitioner must be released.

Finally, Petitioner asks this Court to specify that at any bond hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community. Pet. at 39. Petitioner

concedes that the allocation of this burden is unsettled, and he "asks the Court to exercise its own judgment" in so requiring. Pet'r's Reply at 14. However, given that no bond hearing has been held and no standard has been applied, this issue does not appear to be ripe. Cf. D.Y.E.H. v. Warden, No. 7:25-CV-201 (WLS-AGH), 2026 WL 1230386, at *11 (M.D. Ga. Apr. 6, 2026) (finding original hearing did not comport with requirements of due process and ordering new hearing at which DHS must establish by clear and convincing evidence that petitioner was a danger to the community or flight risk); Lopez v. Paulk, 830 F. Supp. 3d 1356, 1373–74 (M.D. Ga. 2026) (same).

## III. CONCLUSION

For the above reasons, it is hereby **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED**. Within **SEVEN (7) DAYS** from the date of this Order, Respondents are **ORDERED** either to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226 or release Petitioner from custody.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED**, this 4th day of September, 2026.

Mark H. Cohen

MARK H. COHEN
United States District Judge